UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GERALD CARPIO, for and on behalf of A.C., a minor, and A.C., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL WAY SCHOOL DISTRICT,<br><br>Defendant. | CASE NO. C15-46 MJP<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment. (Dkt. No. 14.) Having reviewed the Motion, Plaintiffs' response, (Dkt. No. 20), Defendant's reply, (Dkt. No. 22), and all related papers, the Court hereby DENIES Defendant's Motion.

**Background**

Plaintiffs—Gerald Carpio on behalf of his daughter A.C. and Arian Carpio[1]—bring suit against Defendant Federal Way School District asserting violations of Title IX (20 U.S.C. §

---

[1] Plaintiff Arian Carpio turned 18 years of age in March 2015. Therefore, the Court uses her first name to avoid confusion with her sister.

1681) and RCW 28A.640.020. (Dkt. No. 1 at 7–13.) This case was originally filed in King County Superior Court, and was removed to this Court on federal question grounds. (Id.)

Plaintiffs participated in the girls' wrestling programs at Todd Beamer High School ("Beamer") and Decatur High School ("Decatur"), which are operated by Defendant. (Id.) They allege Defendant discriminated against them on the basis of sex in violation of state and federal law by denying them equal treatment and benefits in the provision of facilities, uniforms, competitive opportunities, funding and publicity. (Id.)

Arguing any differences between the girls' and boys' wrestling programs did not rise to a substantial disparity in violation of state and federal law, Defendant now moves for summary judgment on all of Plaintiffs' claims. (Dkt. No. 14.) Plaintiffs oppose Defendant's motion arguing issues of material fact preclude summary judgment. (Dkt. No. 20.)

## Discussion

### I. Summary Judgment

Summary judgment is proper where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In assessing whether a party has met its burden, the underlying evidence must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### II. Title IX

Title IX prohibits discrimination on the basis of sex in educational programs or activities that are supported by federal aid. 20 U.S.C. § 1681(a). Title IX and its implementing regulations provide, in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any such athletics separately on such basis.

34 C.F.R. § 106.41(a).

### III.  RCW 28A.640.020

Washington law also requires school districts to offer equal athletic opportunities to both males and females in substantially the same manner as federal law. RCW 28A.640.020(c). For claims related to interscholastic recreational and athletic activities, Washington has adopted substantially the same components and analysis developed by the Department of Education, Office for Civil Rights ("OCR") for Title IX.[2] WAC 392-190-025(3).

### IV.  Plaintiffs' Equal Treatment Claims

Plaintiffs assert equal treatment claims. (Dkt. No. 20 at 15.) "Equal treatment" has been interpreted by the OCR to require equivalence in the "availability, quality and kinds of benefits opportunities, and treatment afforded members of both sexes." (Dkt. No. 15-7 at 4.) Compliance in the area of equal treatment and benefits is based on an overall comparison of the male and female athletic programs, including the provision of equipment and supplies, the scheduling of games and practices, the availability of training facilities, the opportunity to receive coaching, the provision of locker rooms and other facilities and services, and publicity. 34 C.F.R. §106.41(c).

Under this standard, "identical benefits, opportunities, or treatment are not required, provided the overall effect of any differences is negligible." (Dkt. No. 15-7 at 4.) "If

---

[2] Policy interpretation by the OCR is entitled to deference by courts. Mansourian v. Regents of Univ. of California, 602 F.3d 957, 966 n.9 (9th Cir. 2010).

comparisons of program components reveal that treatment benefits or opportunities are not equivalent in kind, quality or availability, a finding of compliance may be justified if the differences are the result of nondiscriminatory factors." (Id.) For example, the OCR has determined that a finding of compliance may be justified if a disparity is due to "legitimately sex-neutral factors related to special circumstances of a temporary nature." (Id. at 5.) If the disparity is not justified, the question is whether it is substantial enough to deny members of one sex equal athletic opportunities. (Id. at 6.)

"A disparity is a difference, on the basis of sex, in benefits, treatment, services, or opportunities that has a negative impact on athletes of one sex when compared with benefits, treatment, services, or opportunities available to athletes of the other sex." McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck, 370 F.3d 275, 293 (2d Cir. 2004). A disparity in one program component can alone constitute a violation if it is substantial enough in and of itself to deny equality of athletic opportunity to students of one sex at a school. Id.

Defendant argues no reasonable jury could find that any disparities between the girls' and boys' wrestling programs at Decatur and Beamer were substantial enough to deny Plaintiffs equal athletic opportunity. (Dkt. No. 14 at 10.) The Court disagrees, and finds Plaintiffs have put forth sufficient evidence from which a reasonable jury could find that disparities between the boys' and girls' wrestling programs at Decatur and Beamer denied Plaintiffs equal athletic opportunity in violation of state and federal law.

Plaintiffs offer evidence that Beamer has a practice area formally known as the "activity room," but commonly referred to as the "wrestling room." (Dkt. No. 21-1 at 59.) The room is padded and small in size. (Id. at 44–45.) Arian Carpio testified at her deposition that small rooms are ideal for wrestling practice because they allow wrestlers to sweat out water weight.

(Id. at 64.) The girls' wrestling team at Beamer shared the "wrestling room" with the boys' wrestling team during the 2012–2013 school year. (Id. at 69.) However, since then, the Beamer girls' wrestling team has held most of its practices in spaces used primarily as cafeterias. (Dkt. No. 15-4 at 9, 15-1 at 10.) Arian Carpio testified at her deposition that because these rooms were bigger in size than the wrestling room, she was required to additional cardio on her own time to maintain her competition weight. (Dkt. No. 21-1 at 64.)

Plaintiffs allege the quality of outings made available to female athletes was lower than those afforded to male athletes. (Dkt. No. 20 at 18.) They point to evidence that during the 2011–2012 school year, the Beamer boys' wrestling team attended two or three meets that required an overnight stay, and the girls' wrestling team attended one meet that required an overnight stay. (Dkt. No. 16 at 2.) During the 2012–2013 school year, the boys' wrestling team participated in two trips that required an overnight stay, while the girls' wrestling team participated in one trip that required an overnight stay. (Id.) Arian Carpio testified at her deposition that overnight trips provide wrestlers with a greater variety of competition. (Dkt. No. 21-1 at 78.)

Plaintiffs argue "both Arian and A.C. have experienced difficulty getting recognition from their schools for their accomplishments." (Dkt. No. 20 at 10.) Arian Carpio testified at her deposition that she asked to have her name put on Beamer's stat board for wrestling. (Dkt. No. 21-1 at 81.) She further testified that instead of adding her name to the board, Beamer removed the stat board altogether. (Id. at 81–82.) Plaintiffs offer evidence that A.C. asked to have her name added to the Wall of Fame for wrestlers at Decatur, but that her request was denied. (Id. at 124.)

Plaintiffs point to evidence that shows that when Arian Carpio first started wrestling at Beamer, she and other members of the girls' wrestling team were given male singlets to wear. (Dkt. No. 15-5 at 26.) When the school purchased new singlets for the girls' wrestling team, it also purchased new singlets for the boys' wrestling team and a small set of gray men's singlets. (Dkt. No. 21-1 at 72.) Arian Carpio testified at her deposition that members of the boys' wrestling team were allowed to wear these gray singlets whenever they reached the finals match at a tournament, but that members of the girls' wrestling team did not have the same option. (Id.) Plaintiffs offer evidence that members of the girls' wrestling team at Decatur are given one singlet to use for competitions. (Id. at 108.) However, members of the boys' wrestling team at Decatur are given more than one singlet. (Id.) A.C. testified at her deposition that it is important for team members to have more than one singlet, in case there is a problem with one of their singlets. (Id.)

Arian Carpio testified at her deposition that she felt like a second-class citizen because of the disparities between the boys' and girls' wrestling programs at Beamer. (Id. at 80.) She also testified that her experiences on the girls' wrestling team at Beamer were the main reason she decided to graduate early. (Id. at 56–57.) A.C. testified at her deposition that she did not feel like she was part of a varsity team because of the disparities between the boys' and girls' wrestling programs at Decatur. (Id. at 105.) She also attributed her fourth place finish at the state championships to her experiences on the girls' wrestling team at Decatur, stating she thought she would have finished higher. (Id. at 107.)

Defendant makes various arguments to support its position that these facts cannot support violations of state and federal law. (Dkt. Nos. 14, 22.) For example, Defendant argues there is insufficient evidence that any alleged disparity had a negative impact on Plaintiffs. (Dkt. No. 22

at 12.) The Court disagrees and finds that a reasonable jury could conclude, based on Plaintiffs' deposition testimony, that the alleged disparities between the boys' and girls' wrestling programs at Beamer and Decatur negatively impacted Plaintiffs. (See e.g. Dkt. Nos. 21-1 at 80, 105). Defendant also argues there is no authority supporting the proposition that some of the disparities alleged by Plaintiffs are Title IX disparities. (Dkt. No. 22 at 8.) This argument is unavailing, because there is no exclusive list of disparities that courts can consider in assessing compliance with Title IX. (See e.g. Dkt. No. 15-7 at 5.)

Defendant agues Beamer "purchased seven of [the] gray singlets as a one-time purchase and they never did it again." (Dkt. No 22 at 6.) Defendant contends this difference was not so significant as to deny Arian Carpio equal athletic opportunity. (Id.) The Court disagrees and finds, based on Arian Carpio's deposition testimony, that this is a question of fact for the jury. Defendant also offers evidence that Samuel Hunt, the coach of the Decatur girls' wrestling team, chose not issue two singlets to members of the girls' wrestling team because he saw no value in doing so. (Dkt. No. 23 at 4.) However, whether the disparity alleged by Plaintiffs is justified in light of Mr. Hunt's testimony is a question of fact for the jury.

Defendant cites to cases in which other courts have found Title IX violations and argues the facilities used by the girls' wrestling teams at Beamer and Decatur "were far more compliant with Title IX" than the facilities at issue in those cases. (Dkt. No. 22 at 4–5.) However, these cases—which  involved different schools, sports, and alleged disparities—do not show Defendant is entitled to judgment as a matter of law on Plaintiffs' claims. (Id.)

Defendant argues Arian Carpio equivocated at her deposition when asked whether the stat board at Beamer was taken down "specifically because of her." (Id. at 11.) This argument is unavailing, because Plaintiffs are not required to prove discriminatory motive to prevail on their

claims.  See Communities for Equity v. Michigan High Sch. Athletic Ass'n, 459 F.3d 676, 696 (6th Cir. 2006).  Defendant offers evidence that Decatur is in the process of creating a Wall of Fame for the girls' wrestling team.  (Dkt. No. 22 at 11.)  However, the Court cannot conclude as a matter of law, based on this evidence, that the disparity alleged by Plaintiffs is justified.

Viewing the material facts in the light most favorable to Plaintiffs, the Court finds a reasonable jury could conclude the disparities alleged by Plaintiffs denied Plaintiffs equal athletic opportunity in violation of state and federal law.  The Court, therefore, DENIES Defendant's Motion for Summary Judgment.  (Dkt. No. 14.)

### I.     Injunctive Relief

Plaintiffs seek injunctive relief "compelling Defendant to provide equal funding, facilities, equipment, and coaching to the men's and women's wrestling teams within the school district."  (Dkt. No. 1 at 12.)  Defendant argues Arian Carpio's claims for injunctive relief are moot, because she has graduated.  (Dkt. No. 14 at 22.)  However, as Plaintiffs point out in their response brief, (Dkt. No. 20 at 24), although Arian Carpio's claims for injunctive relief are moot, A.C.'s claims are not moot because she is presently a junior at Decatur.

### Conclusion

The Court DENIES Defendant's Motion for Summary Judgment, (Dkt. No. 14).

The clerk is ordered to provide copies of this order to all counsel.

Dated this 11th day of March, 2016.

_____
Marsha J. Pechman
United States District Judge